## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff**,

          **v.**                  **Criminal No.** 16-242 (FAB)

BYRON MONTIJO-MAYSONET [1],
LUIS MELÉNDEZ-RAMOS [2],

    **Defendants.**

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendant Byron Montijo-Maysonet ("Montijo")'s motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"). (Docket No. 173.) Also before the Court is defendant Luis Meléndez-Ramos ("Meléndez")'s motion to withdraw his guilty plea and motion for arrest of judgment pursuant to Federal Rule of Criminal Procedure 34 ("Rule 34"). (Docket Nos. 148 and 149.) For the reasons set forth below, Montijo's motion for judgment of acquittal, Melendez's motion to withdraw his guilty plea, and Melendez's motion for arrest of judgment are all **DENIED**.

## I.    Procedural Background

On August 25, 2016 a grand jury returned a ten-count superseding indictment charging Meléndez and Montijo with offenses pertaining to their sexual interactions with minor females.

(Docket No. 28.)  Counts one and two charge Meléndez and Montijo, respectively, with sexual enticement of a minor using a means of interstate commerce in violation of 18 U.S.C. § 2422(b) ("section 2422").  Counts three through six allege that Meléndez and Montijo transported minor females within the Commonwealth of Puerto Rico with the intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a) ("section 2423").  (Docket No. 28 at pp. 2–5.)  The remaining counts charge Meléndez with producing child pornography in violation of 18 U.S.C. § 2251(a) and (e).  Id. at pp. 5-7.

After reaching a plea agreement with the United States, Meléndez pled guilty to producing child pornography as charged in count seven of the superseding indictment.  (Docket No. 72.)  The Court imposed a sentence of 192 months on Meléndez.  (Docket Nos. 92 and 93.)  Montijo, for his part, elected to stand trial.  (Docket Nos. 140, 141 and 143.)  The jury found Montijo guilty of counts one, three, four, five and six of the superseding indictment.  (Docket No. 146.)

## II.  Montijo's Rule 29 Motion

### A.  Factual Background

For purposes of Montijo's Rule 29 motion, the Court summarizes the pertinent facts in the light most favorable to the jury's verdict, and in a manner consistent with the trial record.

United States v. Valerio, 676 F.3d 237, 240 (1st Cir. 2012); United States v. Polanco, 634 F.3d 39, 40 (1st Cir. 2011).[1]

At trial, the United States presented evidence establishing that on November 24, 2015 and November 30, 2015 Meléndez and Montijo transported two minor females from their middle school in Manatí, Puerto Rico to a motel in Barceloneta, Puerto Rico to have sexual intercourse.

### 1. The First Criminal Sexual Encounter

On November 24, 2015, minor female number 1 ("MF 1")'s mother dropped her off at school, where MF 1 attended the eighth grade.[2] (Docket No. 168 at p. 20.) At approximately 8:00 AM, MF 1 and MF 2 met Meléndez and Montijo at a food truck adjacent to their middle school; Melendez and Montijo had arrived in a car that Montijo drove. Id. at p. 22. MF 1 and MF 2 then entered the car that Montijo was driving "to go for a ride." Id. at p. 23.

---

[1] A defendant may move for judgment of acquittal within fourteen days after a guilty verdict or after the discharge of the jury, whichever is later. Fed. R. Crim. P. 29(c)(1). In this case, the jury reached a verdict on March 7, 2018. (Docket Nos. 143 and 146.) The Court granted Montijo's motion for an extension of time to file post-trial motions, allowing Montijo until April 30, 2018 to file the Rule 29 motion. (Docket No. 161.) Montijo moved for a judgment of acquittal on April 30, 2018. (Docket No. 173.) Accordingly, Montijo's Rule 29 motion is timely.

[2] The three minor females associated with this criminal action attended the same middle school, which consists only of the seventh, eighth, and ninth grades. (Docket No. 158 at p. 19.) MF 1 and minor female number 2 ("MF 2") testified at Montijo's trial. (Docket Nos. 167 and 168.) Minor female number 3 ("MF 3") did not testify.

According to MF 1, "[she] did not know where it was that [she] was going." Id. at p. 51.

With MF 1 and MF2 in the car, Montijo first drove to the Zorrilla public housing project, and "asked if [the girls] wanted to smoke or drink anything." Id. Montijo subsequently drove MF 1 and MF 2 to the Jackeline Motel. Id. at p. 26. The Jackeline Motel is located approximately 1,500 feet from its main entrance "[b]ecause in olden times, like years ago, these businesses were not placed on the road itself. It was more private." (Docket No. 167 at pp. 121—122.) Hedges and a concrete wall provide additional privacy. Id. at p. 123. To rent a room at the Jackeline Motel, guests pull into a garage. Id. The garage door closes with a push of a button, at which point guests place $20 in a service drawer to occupy a room for six-hours with an option to extend their stay for an additional fee. Id. at pp. 123—124. Jackeline Motel employees record the license plate numbers of vehicles belonging to guests, the time guests arrive and depart from the motel, and the room numbers assigned. Id. Guests may leave at their discretion. Id. Indeed, guests need not disclose their personal information, and are not required to interact with Jackeline Motel employees. Id.

According to MF 1, the only individuals she observed at the Jackeline Motel on November 24, 2015 were MF 2,

Meléndez, and Montijo.  (Docket No. 168 at p. 27.)  Meléndez and

MF 2 retreated to one room, and Montijo and MF 1 occupied another

room.  Id. at p. 28.  Once in the room, Montijo informed MF 1 that

she "didn't have to do anything [she] didn't want to do," and

complimented her appearance.  Id. at pp. 28-29.  On this occasion,

Montijo and MF 1 had no physical contact.  Id.  Meléndez and MF 2,

however, had sexual intercourse.  (Docket No. 167 at p. 159.)

Subsequently, Meléndez and Montijo returned MF 1 and MF 2 to the

"entrance before the school," according to MF 2, "so [their

classmates and teachers] wouldn't see [them]."  Id. at p. 161.

          In the days following their first trip to the

Jackeline Motel, Montijo communicated with MF 1 via KIK, a social

media application.  (Docket No. 168 at p. 31.)  Montijo and MF 1

"didn't talk about anything specific."  Id. at p. 32.  Montijo,

however, conveyed that "he wanted to see [MF 1] again."  Id.

Additionally, MF 1, Montijo and Meléndez formed a group chat on

KIK.  Id.  Meléndez requested MF 1 "to bring in another person."

Id. at p. 33.  MF 1 complied, inviting an eighth grade student,

minor female number 3 ("MF 3"), to the group chat.  Id.  The group

planned another "ride" to the Jackeline Motel.  Id. at pp. 33—34.

### 2.    The Second Criminal Sexual Encounter

          On the morning of November 30, 2015, Meléndez and

Montijo returned to the same location they had previously met MF

1 and MF 2.  Id. at p. 165.  MF 2 observed MF 1 and MF 3 walk towards the defendants.  Id.  MF 3 looked at MF 2 "as though she didn't want to go" with Meléndez and Montijo.  Id.  MF 2 remained at the school.  Id.

MF 1 and MF 3 waited until 8:00 AM to join the defendants in the car Montijo drove because at that time "there was no risk that the teachers would catch [them]."  Id. at p. 35. On the day of the second incident, MF 1 and MF 3 wore their school uniforms.  Id.  MF 1 and MF 3 spoke to each other in the back seat of the car.  Id. at p. 37.  MF 3 asked MF 1 "what did she have to do, and [MF 1] told her that she didn't have to do anything [MF 3] didn't want to do."  Id.

Meléndez and Montijo transported MF 1 and MF 3 to the Jackeline Motel.  Id. at p. 38.  The defendants again separated the minor females.  Id.  Meléndez and MF 3 occupied one room.  Id. Montijo and MF 1 shared another room, where they had sexual intercourse.  Id.  Subsequently, MF 1 removed a notebook from her backpack.  Id.  Montijo questioned MF 1 about her age, and MF 1 answered that she was thirteen years old.  Id. at p. 39.  Montijo stated to MF 1 that "he wouldn't have done it" if he knew MF 1 was thirteen years old.  Id. at p. 56.  Montijo claimed, however, that "he was going to be with [MF 1] always, that he was going to look after [MF 1], that he was going to wait for [MF 1] to come out

from high school, and that he was going to take care of [MF 1]."
Id. at p. 57.

After MF 1's conversation with Montijo, she visited Meléndez and MF 3's room, where she observed that Meléndez and MF 3 were lying in bed without clothes.  Id. at p. 39.  MF 1 returned to her room with Meléndez's phone.  Id.  A classmate from her school called Meléndez's phone to alert MF 1 and MF 3 that they "had to go to school, that the police was at school, that they had already caught [them]."  Id. at p. 40.  While Meléndez and MF 3 dressed, MF 1 informed Montijo that her parents were at the middle school with the police.  Id. at p. 41.

Meléndez and Montijo later departed from the Jackeline Motel with MF 1 and MF 3.  Montijo drove MF 1 and MF 3 to a Burger King Restaurant "so [they] could say that they had been eating."  Id.  During the drive to the Burger King, Montijo appeared "anxious," as though "something bad [was] going to happen."  Id. at p. 42.

After transporting them to the Burger King, Montijo drove MF 1 and MF 3 to the middle school, where MF 3's father waited for his daughter's return.  Id.  MF 3's father observed Montijo's car located in front of the middle school, where "[Meléndez and Montijo] let go of [his] girl and just sped off." (Docket No. 167 at p. 109.)  MF 1 attempted to exit the car, but

"[MF 3's] father went off chasing [them], so [she] didn't have any time." (Docket No. 168 at p. 43.) Montijo fled from the middle school with Meléndez and MF 1 in the car.[3] (Docket No. 167 at p. 110.)

Montijo subsequently drove MF 1 to a house in Vega Baja, Puerto Rico. (Docket No. 168 at p. 44.) After Montijo told MF 1 to remain calm, a man drove the defendants and MF 1 to the Zorrilla public housing project in a van. Id. at p. 45. Meléndez and Montijo "wait[ed] for things to calm down." Id. at p. 46. A second man drove MF 1 and Montijo to a location near the school. Id. Once at this location, MF 1 exited the second man's car, and walked back to the school. Id. at pp. 46-47.

   **B.   Rule 29 Standard**

A court may set aside the jury's guilty verdict and enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. See Fed.R.Crim.P. 29. In reviewing a motion for judgment of acquittal, courts must consider the evidence "in the light most favorable to the prosecution" and determine whether the "body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable

---

[3] MF 3's father identified Montijo at trial. (Docket No. 167 at p. 114.)

doubt." <u>United States v. Lara</u>, 181 F.3d 183, 200 (1st Cir. 1999) (citations omitted). Rule 29 motions require courts to "take into account all evidence, both direct and circumstantial, and [to] resolve evidentiary conflicts and credibility disputes in favor of the jury's verdict." <u>United States v. Valerio</u>, 676 F.3d 237, 244 (1st Cir. 2012). In sum, while the sufficiency of the evidence is at the heart of the Rule 29 inquiry, deference to the jury's verdict informs the Court's analysis.

The Court need only satisfy itself that the guilty verdict "finds support in a plausible rendition of the record." <u>See, e.g.</u>, <u>United States v. Shaw</u>, 670 F.3d 360, 362 (1st Cir. 2012). Against this backdrop, the First Circuit Court of Appeals has called the sufficiency of evidence challenge "a tough sell," <u>United States v. Polanco</u>, 634 F.3d 39, 45 (1st Cir. 2011), observing that defendants seeking acquittal on this basis "face an uphill battle," <u>United States v. Perez-Melendez</u>, 599 F.3d 31, 40 (1st Cir. 2010); <u>accord United States v. Hatch</u>, 434 F.3d 1, 4 (1st Cir. 2006) ("These are daunting hurdles.") (internal quotation marks omitted).

## C. Discussion

Montijo challenges his conviction on three fronts. First, Montijo argues that the evidence introduced at trial failed to prove that he communicated with MF 1 via KIK, or that these

communications served to "persuade, induce, entice, and coerce" MF 1 within the meaning of section 2422. (Docket No. 173 at pp. 4—11.) Second, Montijo contends that the United States failed to prove the predicate offense underlying the section 2422 violation because he had no knowledge that MF 1 was less than sixteen years old. Id. at pp. 12-14. Finally, Montijo maintains that there was insufficient evidence to prove that he transported MF 2 and MF 3 with the intent that each minor female engage in unlawful sexual activity with Meléndez. Id. at pp. 15—17. The Court addresses each of Montijo's arguments in turn.

### 1.    Montijo's Communication with MF 1 on KIK

Montijo asserts that because "no evidence, other than [MF 1's] testimony" established that "Montijo used KIK to chat with her," judgment of acquittal is appropriate. (Docket No. 173 at p. 4.) The Court disagrees.

MF 1 testified that after her first meeting with Montijo on November 24, 2017, the two communicated via KIK. (Docket No. 168 at p. 31.) She specified that KIK "is an application that you can communicate with a person through text." Id. at p. 32. Montijo sent MF 1 text messages on KIK indicating that he "wanted to see [her] again." Id. Moreover, Montijo, Meléndez, and MF 1 planned the November 30, 2017 trip to the Jackeline Motel during the course of a KIK group chat. Id.

Construing the facts in the light most favorable to the jury verdict compels the Court to conclude that MF 1's testimony reasonably supports a finding that Montijo used KIK to entice a minor in violation of section 2422 notwithstanding the fact that the United States did not introduce the actual communications. Indeed, Kimberly Pérez-Morales ("Pérez"), a Task Force Officer with Homeland Security Investigations who reviewed the data extracted from Montijo's cellular phone, testified that KIK is distinct because "once the messages have been deleted, they can't be recovered from the [user's] phone." Id. at p. 74. "[L]aw enforcement forensic tools" are incapable of accessing deleted KIK messages. Id. Furthermore, Pérez testified that instant messages on KIK are transmitted via the internet, which is a "means of interstate or foreign commerce." See United States v. Dwinells, 508 F.3d 63, 65 (1st Cir. 2007) ("The statute in question, 18 U.S.C. § 2422(b), criminalizes the use of any instrumentality of interstate or foreign commerce, such as the Internet, to persuade, induce, entice, or coerce a minor to engage in criminal sexual activity."). Id. at p. 75.

The United States need not introduce evidence other than the testimony provided by MF 1 to sustain a finding that Montijo utilized KIK, an instrumentality of interstate commerce, to persuade MF 1 to engage in criminal sexual activity. See United

States v. Cortés-Cabán, 691 F.3d 1, 14 (1st Cir. 2012) ("We repeatedly have held that 'the <u>uncorroborated</u> testimony of a cooperating accomplice may sustain a conviction so long as that testimony is not facially incredible.") (quoting <u>United States v. Torres-Galindo</u>, 206 F.3d 136, 140 (1st Cir. 2000)). Consequently, a rational jury could infer that Montijo and MF 1 exchanged KIK messages to plan their second encounter at the Jackeline Motel.

     **a.   Evidence at Trial Proved Montijo Persuaded, Induced, Enticed or Coerced MF 1**

Montijo asserts that the evidence submitted at trial is insufficient to prove his intent to persuade, induce, entice, or coerce MF 1 to engage in criminal sexual activity. (Docket No. 173 at pp. 5—6.) The United States relied predominately on MF 1's testimony to demonstrate that Montijo persuaded her to have sexual intercourse with him on November 30, 2016. (Docket No. 168 at pp. 17-47.) To rule on Montijo's Rule 29 motion, "[a]ll this court must decide is whether or not evidence was presented for a reasonable jury to come to the conclusion that there was some form of inducement." <u>United States v. Lundy</u>, 676 F.3d 444, 450 (5th Cir. 2012) (holding that defendant's sexually explicit text messages and phone conversations entitled a jury to find defendant guilty of violating section 2422).

In the context of section 2422, "persuade, induce, entice or coerce" are "words of common usage that have plain and ordinary meanings." <u>United States v. Gagliardi</u>, 506 F.3d 140, 147 (2d Cir. 2007) (rejecting the defendant's argument that section 2422 is unconstitutionally vague because "the statute's terms are sufficiently definite that ordinary people using common sense could grasp the nature of the prohibited conduct"). "Persuade" is "to win over, by an appeal to one's reason and feelings, into doing or believing something." <u>United States v. Rutgerson</u>, 822 F.3d 1223, 1232 (11th Cir. 2016). Moreover, induce "means to stimulate the occurrence or to cause." <u>Id.</u>

Relying on a dissenting opinion in <u>United States v. Laureys</u>, 653 F.3d 27, 40 (D.C. Cir. 2011), Montijo argues that "[n]othing about [MF 1's] sentence regarding her chats with Mr. Montijo reflect any attempt on his behalf to 'bend the [child] victim's will' <i>i.e.</i>, entice her to have sex with him." (Docket No. 173 at p. 6) (citing <u>Laureys</u>, 653 F.3d at 40 (Brown, J., dissenting)).

Aside from constituting non-binding authority, Montijo's reliance on the dissenting opinion in <u>Laureys</u> is misplaced because the facts in this criminal action are distinguishable. The defendant in <u>Laureys</u> communicated in an

online chatroom with a law enforcement officer posing as a child
molester, offering the defendant access to a twelve-year old
female.   653 F.3d at 28—29.   The defendant was subsequently
convicted of violating section 2422, a conviction that was affirmed
on appeal.   Id. at 35.   The dissenting opinion on which Montijo
relies challenges the affirmance of the defendant's conviction,
concluding that the defendant's attempt "to persuade an **adult** to
grant him access to a minor" cannot serve as a basis for a
conviction pursuant to section 2422.   Id. (emphasis added).   Unlike
the defendant in Laureys, Montijo did not attempt to persuade an
adult to persuade a child to engage in sexual activity with him.
Rather, Montijo communicated directly with MF 1 both in person and
via KIK.

More importantly, ample evidence exists in the
record to sustain a finding that Montijo persuaded, induced,
enticed or coerced MF 1 to have sexual intercourse with him.   MF 1
traveled to the Jackeline Motel on November 30, 2015 only because
she and Montijo planned the "vuelta," or "ride" on KIK.   (Docket
No. 168 at p. 34.)   Montijo drove on both occasions, transporting
minor females who normally relied on their parents for rides to
middle school.   MF 1 and Montijo had no physical contact during
the first encounter, but had sexual intercourse during the second
encounter after the two communicated via KIK.   That MF 1 engaged

in sexual activity with Montijo only after exchanging text messages on KIK supports the inference that the Montijo's communications persuaded MF 1 to have sexual intercourse.   Consequently, a rational jury could conclude that MF 1 assented to Montijo's request to travel with him from Manatí to the Motel Jackeline in Barceloneta to engage in criminal sexual activity.

## 2.   Mistake of Age

Montijo asserts that his mistaken understanding of MF 1's age requires the Court to enter a judgment of acquittal on the section 2422 count. (Docket No. 173 at p. 12.) During pretrial litigation, the Court granted in part and denied in part Montijo's motion *in limine* concerning a mistake of age defense.[4]   United States v. Montijo-Maysonet, 292 F. Supp. 3d 568 (D.P.R. 2018) (Besosa, J.).   The Court permitted Montijo to raise a mistake of age defense as to the section 2422 count, but not the section 2423

---

[4] The United States conceded that the mistake of age is a valid defense to section 2422.   Docket No. 122; see Dwinells, 508 F.3d at 68 (holding that section 2422(b) "requires that a defendant possess the **specific intent** to persuade, induce, entice or coerce **a minor** into committing some illegal activity") (emphasis added).

counts.[5]  Id. (citing United States v. Tavares, 705 F.3d 4, 20 (1st

Cir. 2013) ("knowledge of the victim's age is not an element of 18

U.S.C. § 2423(a), and therefore mistake as to age is not an

available defense.")).

In accordance with the Court's order, Montijo

raised a mistake of age defense at trial.  Montijo rooted his

theory of the case on a "blind date" gone awry.  (Docket No. 167

at p. 79.)  Montijo presented himself as the victim of Meléndez's

deceit: "[Meléndez] tricked his own friend," because he "needed a

wingman, needed somebody to go with him because maybe [MF 2] or

[MF 3] would not go by herself."    (Docket No. 169 at p. 41.)

Montijo merely accompanied Meléndez because Meléndez "promised him

a good time."  Id. at p. 45.  Montijo only learned of MF 1's age,

he averred, after he had sexual intercourse with her on

November 30, 2015.  (Docket No. 167 at p. 83.)

---

[5] Section 2423(a) provides that:

> A person who knowingly transports an individual who has not attained
> the age of 18 years in interstate or foreign commerce, or in any
> commonwealth, territory or possession of the United States, with
> intent that the individual engage in prostitution, or any sexual
> activity for which any person can  be charged with a criminal
> offense, shall be fined under this title and imprisoned not less
> than 10years of for life.

18 U.S.C. § 2423(a).  The Court instructed the jury that "it is not a defense
to the crime of transportation of a minor with the intent to engage in criminal
sexual activity that [Montijo] was mistaken about the age of the victim at the
time the sexual activity took place."  (Docket No. 169 at p. 14.)

In construing the evidence in the light most
favorable to the verdict, the Court concludes that there is
sufficient evidence to sustain a finding that Montijo was aware
that MF 1 was a minor.  Indeed, the appearance of the minor females,
the location of the food truck adjacent to the middle school, the
school uniforms that the minor females wore on November 30, 2015,
and the extent to which Montijo attempted to conceal his movements
with MF 1 on November 30, 2015 support a finding that Montijo was
not mistaken about MF 1's age.

### 3.  Montijo Transported Minor Females with the Intent to Engage in Criminal Sexual Activity

The third argument Montijo sets forth in support of
his Rule 29 motion pertains to counts four and six, which charge
Montijo and Meléndez with transporting MF 2 and MF 3, respectively,
within the Commonwealth of Puerto Rico with the intent to engage
in criminal sexual activity in violation of section 2423.  (Docket
No. 28 at pp. 3—5.)  Montijo contends that the United States "was
unable to provide any evidence that Mr. Montijo's intent was that
MF 2 and MF 3 were to have sex with [Meléndez]."  (Docket No. 173
at p. 16.)  The United States failed to provide sufficient proof
of intent, Montijo argues, because he was not in the motel room
with Meléndez and MF 2 during the first sexual encounter, or MF 3

during the second sexual encounter.  Id. at p. 16.  The Court
disagrees.

MF 2 testified that she had sexual intercourse with
Meléndez on November 24, 2015.  (Docket No. 167 at p. 159.)
Additionally, MF 1 testified that she observed MF 3 and Meléndez
in bed without clothes on November 30, 2015.  (Docket No. 168 at
p. 39.)  Moreover, as the United States asserted in its opposition
to Montijo's Rule 29 motion, the testimony presented at trial
"describing the [Jackeline] motel, where it was located, how it
operated and the contents of its room" permitted the jury to infer
that "the main purpose of anyone going there was to engage in
illicit sexual intercourse." (Docket No. 177 at p. 8.)  That some
of the evidence may be subject to an interpretation that is
inconsistent with a finding of guilt beyond a reasonable doubt is
no reason for the Court to disturb the jury's verdict.  This is so
because the government need not "[e]liminate every possible theory
consistent with the defendant's innocence."  United States v.
Perez-Meléndez, 599 F.3d 31, 40 (1st Cir. 2010) (citation omitted);
see also United States v. Abreu, 952 F.2d 1458, 1468 (1st Cir.
1992) ("It is the province of the jury to decide the appropriate
weight to give specific evidence.").  In sum, the Court is
satisfied that the United States presented sufficient evidence to
sustain a finding of guilt as to each element of each offense of

conviction.    Accordingly,  Montijo's  motion  for  a  judgment  of
acquittal  is  **DENIED.**

## II.  **Meléndez's Motion to Withdraw His Guilty Plea**

The   gravamen   of   Meléndez's   motion   is   an   ineffective
assistance  of  counsel  claim.   (Docket  No.  148  at  p.  1.)   Meléndez
contends  that  Rafael  Anglada-López  ("Anglada"),  his  former  defense
counsel,  failed  to  inform  him  of  "the  ramifications  of  a  guilty
plea."  (Docket  No.  148  at  p.  1.)   Moreover,  Meléndez  alleges  that
Anglada   provided   "incorrect   legal   advice"   to   accept   the   plea
agreement  to  protect  the  minor  victims  from  "the  strain,  pressure
and  embarrassment  of  a  public  trial."   Id.

Meléndez  moved  to  withdraw  his  guilty  plea  on  March  6,  2018,
one  month  after  he  was  sentenced.    (Docket  Nos.  92  and  148.)
Pursuant  to  Federal  Rule  of  Criminal  Procedure  11  ("Rule  11"),
"[a]fter  the  court  imposes  sentence,  the  defendant  may  not  withdraw
a  plea  of  guilty  or  *nolo contendere*,  and  the  plea  may  be  set  aside
only  on  direct  appeal  or  collateral  attack".   Fed.R.Crim.P.  11(e);
see  United States v. Mercado-Flores,  872  F.3d  25,  30  (1st  Cir.
2017)  ("[O]nce  the  district  court  has  sentenced  the  defendant,  it
lacks  jurisdiction  (except  in  a  collateral  proceeding)  to  consider
a  defendant's  arguments  about  the  validity  of  his  guilty  plea.").
Accordingly,  the  Court  cannot  adjudicate  Meléndez's  ineffective

assistance of counsel claim without establishing whether jurisdiction exists in this post-conviction action.

## A. Ineffective Assistance of Counsel

The appropriate basis for Meléndez's ineffective assistance of counsel claim is 28 U.S.C. § 2255 ("section 2255"). See United States v. Rodríguez, 457 F.3d 109, 117 (1st Cir. 2006) ("Ineffective assistance claims should ordinarily be raised in a petition under 28 U.S.C. § 2255"). Section 2255 permits a "prisoner in federal custody" to "petition the sentencing court to vacate, set aside or correct the sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States." Conley v. United States, 323 F.3d 7, 22 (1st Cir. 2003); 28 U.S.C. § 2255. "As the First Circuit has stated, 'substance trumps form,' and any motion that is 'substantively within the scope of § 2255 is a motion under § 2255, no matter what title the prisoner plasters on the cover.'" United States v. Tormes-Ortiz, No. 88-253, 2014 U.S. Dist. LEXIS 81224 at *3 (D.P.R. June 12, 2014) (Fusté, J.) (quoting Trenkler v. United States, 536 F.3d 87, 97 (1st Cir. 2008). Because Meléndez is proceeding *pro se*, his motion is entitled to a liberal construction. Linares-Rosado v. Torres-Medina, No. 11-1659, 2012 U.S. Dist. LEXIS 152226 *5 (D.P.R. Oct. 22, 2012) (Fusté, J.). Consequently, the Court

construes Meléndez's ineffective assistance of counsel claim as a
*habeas* petition pursuant to section 2255.[6]

### 1. Section 2255 Standard

Meléndez premises his section 2255 motion on a
purported violation of the Sixth Amendment. The Sixth Amendment
of the United States Constitution provides that in all criminal
prosecutions "the accused shall enjoy the right to [. . .] the
Assistance of Counsel for his defence." U.S. CONST. amend VI. See
Rivera-Rivera v. United States, 844 F.3d 367, 372 (1st Cir. 2016)
("A claim of ineffective assistance of counsel, rooted in the Sixth
Amendment, may be raised by means of a section 2255 motion.")
(citation omitted).

The principles set forth in Strickland v.
Washington, 466 U.S. 668 (1984), govern ineffective assistance of
counsel claims in the context of a guilty plea. See López-Nieves
v. United States, 917 F.2d 645, 648 (1st Cir. 1990) ("The
Strickland test applies to guilty plea challenges based on
ineffective assistance of counsel") (citing Hill v. Lockhart, 474

---

[6] Section 2255 sets forth a one-year period of limitation, commencing on "the
date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1);
see Barreto-Barreto v. United States, 551 F.3d 95, 100 (1st Cir. 2008) (holding
that "§ 2255 explicitly states that the limitations period 'shall apply' to all
motions made under § 2255"). The Court sentenced Meléndez on February 8, 2018,
and entered judgment the same day. (Docket Nos. 92 and 93.) Meléndez moved to
withdraw his guilty plea, or rather moved for relief pursuant to section 2255,
on March 6, 2018. (Docket No. 148.) Accordingly, Meléndez's section 2255
motion is timely.

U.S. 52, 57 (1985)).  To prevail on a section 2255 motion,
defendants must demonstrate ineffective assistance of counsel by
a preponderance of the evidence.  Lema v. United States, 987 F.2d
48, 51 (1st Cir. 1993).  A defendant must establish that:
(1) counsel's performance "fell below an objective standard of
reasonableness," and (2) that this deficient performance
prejudiced defendant.  Strickland, 466 U.S. at 687.  In relation
to the first element, "[j]udicial scrutiny of counsel's
performance must be highly deferential."  Id. at 688-89.  To
satisfy the second element, the defendant must establish "that
there is a reasonable probability that but for the defense
counsel's errors, [defendant] would not have pleaded guilty and
would have insisted on going to trial."  Moreno-Espada v. United
States, 666 F.3d 60, 64 (1st Cir. 2012) (quoting Hill, 474 U.S. at
59).

       Meléndez's ineffective assistance of counsel claim
is meritless.  In determining whether to grant Meléndez's
ineffective assistance of counsel motion, the Court examines
Anglada's "preparation, advice, and overall performance in
counseling [Meléndez]."  United States v. Caramadre, 807 F.3d 359,
371 (1st Cir. 2015).  The representations made by Meléndez under
oath during his change of plea hearing contradict the assertions
presented in his motion.  At Meléndez's change of plea hearing,

the Court questioned Meléndez in accordance with Rule 11.[7] (Docket

No. 191.)  The Court conducted the following plea colloquy.[8]

    Court:      Mr. Meléndez, what is it that you want to do
                this morning?

    Meléndez: To plead guilty.

    Court:      Based on his answers to my questions and his
                appropriate demeanor, I find defendant Luis
                Meléndez-Ramos to be competent to enter his
                plea of guilty.  Mr. Meléndez, did you receive
                a copy of the indictment that's pending
                against you?

    Meléndez: Yes.

                            * * *

    Court:      Did you discuss the charges in the indictment
                with your attorney, with Mr. Anglada?

    Meléndez: Yes.

    Court:      Did you discuss your decision to plead guilty
                with Mr. Anglada?

    Meléndez: Yes.

    Court:      Are you fully satisfied with the counsel,
                representation and advice given to you by
                Mr. Anglada?

---

[7] Federal Rule of Criminal Procedure 11 states that:

    [b]efore the court accepts a plea of guilty or *nolo contendere*, the
    defendant may be placed under oath, and the court must address the
    defendant personally in open court.  During this address, the court
    must inform the defendant of, and determine that the defendant
    understands [the consequences of pleading guilty].

Fed.R.Crim.P. 11(b)(1).

[8] The Court provides an abridged excerpt of Meléndez's change of plea hearing.
(Docket No. 191.)

Meléndez: Yes.

Court:      Mr. Anglada, do you agree with the [Assistant
            United States Attorney's] summary of your
            client's plea agreement?

Anglada:  Yes, Your Honor.

Court [addressing Mr. Meléndez:

            Did you have an opportunity to discuss your
            plea agreement with Mr. Anglada before you
            signed it?

Meléndez: Yes.

Court:      Mr. Anglada, did you explain the plea
            agreement to Mr. Meléndez in Spanish?

Anglada:  Yes, Your Honor, twice and last time yesterday
            morning.

Court:      Are you satisfied that Mr. Meléndez
            understands his plea agreement?

Anglada:  I understand, Your Honor, he understands.

Court:      Mr. Meléndez, do you understand the terms of
            your plea agreement?

Meléndez: Yes.

Court:      Has anyone attempted in any way to force you
            to sign the plea agreement.

Meléndez: No.

Court:      Do you understand all those serious
            consequences of you plea of guilty?

Meléndez: Yes.

Court:      Mr. Meléndez, how do you plead to the charges
            before the Court?  Guilty or not guilty?

Meléndez: Guilty.

(Docket No. 191.)

Furthermore, the United States set forth the terms of the plea agreement and its theory of the case. <u>Id.</u> Significantly, the United States disclosed that a forensic examination of Meléndez's phone revealed videos of females who appeared to be minors engaged in sexual activity with Meléndez. <u>Id.</u> at p. 20. Law enforcement officers located and interviewed a minor female appearing in multiple videos with Meléndez, confirming that she was 16 years old at the time Meléndez filmed their sexual encounters. <u>Id.</u> Meléndez "understood the charges against him and the spectrum of possible penalties to which an admission of guilt [would] expose him." <u>United States v. Jiménez</u>, 512 F.3d 1, 3-4 (1st Cir. 2007) (noting that "[a] defendant's acknowledgment, during a change-of-plea proceeding, that he understands a lucid explanation of his potential sentencing exposure is powerful evidence of the knowing nature of his guilty plea"). The Court accepted Meléndez's plea of guilty. (Docket No. 191 at p. 22.)

Pursuant to the plea agreement, the United States and Meléndez recommended "a sentence at the lower end of the Sentencing Guidelines range for a total offense level of thirty-eight (38) when combined with the defendant's Criminal History

Category as defined by the Court." (Docket No. 73 at p. 5.) The
parties calculated that a criminal history category I and a
criminal offense level of thirty-eight resulted in a sentencing
guidelines range of 235 through 293 months imprisonment. Id.
Meléndez and Anglada initialed every page of the plea agreement,
including the government's version of the facts, to which
Mr. Meléndez agreed.

> Court:     Mr. Meléndez, do you agree with the Government's
>            version that you just heard?
>
> Meléndez: Yes.
>
> Court:     Is that what you did?
>
> Meléndez: Yes.
>
> Court:     Do you still want to plead guilty?
>
> Meléndez: Yes.
>
> Court:     Mr. Meléndez, how do you plead to the charges [sic]
>            before the Court?  Guilty or not guilty?
>
> Meléndez: Guilty.

Id. at pp. 21-22.

        Meléndez pled guilty to count seven for producing
child pornography in violation of 18 U.S.C. § 2251(a) and (e).
(Docket Nos. 72 and 191, pp. 21-22.)  At sentencing, the United
States dismissed the remaining counts pending against Meléndez.
(Docket No. 92.)  The Court imposed a sentence of 192 months
imprisonment, 43 months below the lower end of the sentencing

guidelines range calculated by the parties pursuant to the plea agreement, and twelve months above the mandatory minimum sentence. Id.

        The record is devoid of any indication that Anglada's purportedly deficient representation prejudiced Meléndez.  The linchpin of Meléndez's motion to withdrawal his guilty plea is that Anglada failed to explain the ramifications of his guilty plea.  (Docket No. 148 at p. 1.)  Meléndez's motion fails to specify what, specifically, Anglada failed to disclose. Id.  At the change of plea hearing, the Court confirmed that Meléndez understood "all those serious possible consequences" of his guilty plea, including the mandatory minimum sentence of fifteen years.  (Docket Nos. 72 and 191.)

        Regarding Meléndez's allegation that Anglada coerced him into pleading guilty to shield the minor victims from a public trial, the Court questioned Meléndez whether anyone "attempted in any way to force you to sign the plea agreement." (Docket No. 191.)  He answered "no."  Id.  Meléndez's statements under oath at the change of plea hearing regarding the adequacy of his legal representation "carry a strong presumption of verity," because "it is the policy of the law to hold litigants to their assurances."  United States v. Marrero-Rivera, 124 F.3d 342, 349 (1st Cir. 1997) (citations omitted).  Even if Anglada allegedly

urged Meléndez to plead guilty to protect the minor victims from trial, the ultimate decision to plead guilty rests with Meléndez. See Smith v. United States, 348 F.3d 545, 552 (6th Cir. 2003) ("Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of conviction."). Moreover, pleading guilty to insulate the minor victims from trial would not necessarily invalidate Meléndez's guilty plea. See De Hoyos v. United States, No. 06-2014, 2009 U.S. Dist. LEXIS 61722 *15 (D.P.R. July 17, 2009) (Cerezo, J.) ("If a defendant elects to sacrifice himself to protect someone close to him that is his choice, and he cannot reverse it after he is dissatisfied with his sentence, or with subsequent developments.") (citing United States v. Buckley, 847 F.2d 991, 1000 (1st Cir. 1988)).

Meléndez received a sentence lower than the punishment recommended by the parties; he pled guilty to just one of the nine counts pending against him, and the United States disclosed statements made by a minor victim corroborating inculpatory video evidence from his cellular phone. See United States v. Oakes, 411 F. Supp. 2d 1, 4 (D. Me. 2006) ("Often the decision to plead guilty is heavily influenced by the defendant's

appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted.") (citing Brady v. United States, 397 U.S. 742, 756 (1992).  Indeed, Meléndez possessed legitimate incentives to plead guilty.

Nothing in the record demonstrates that but for Anglada's guidance, Meléndez "would not have pleaded guilty and would have insisted on going to trial." Moreno-Espada, 666 F.3d at 64 (affirming dismissal of claim of ineffective assistance of counsel because defendant "wholly neglect[ed] to explain why, given better advice, he would have wanted the trial to continue"); see Smoak v. United States, 12 F. Supp. 3d 254, 271 (D. Mass. 2014) (denying motion to withdraw petitioner's guilty plea because "[n]ot only did the petitioner affirm that his attorney had discussed the possible sentence with him prior to his entering a plea," but the "petitioner was present during this discussion and attested that he understood the consequences of his plea"). Meléndez's "second thoughts about some fact or point of law, or about the wisdom of his earlier decision" is no reason to grant his motion.  United States v. Suárez-Colón, 854 F. Supp. 2d 187, 191 (D.P.R. 2012) (Besosa, J.) (citing United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994)).  Because Meléndez failed

to demonstrate that he was prejudiced by Anglada's allegedly ineffective assistance of counsel, his motion is **DENIED**.[9]

## 2.    Evidentiary Hearing

Meléndez requests an evidentiary hearing.  (Docket No. 148 at p. 1.)  Section 2255(b) requires the Court to "grant a prompt hearing" to "determine the issues and make findings of fact and conclusions of law" unless the "files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  The Court may deny a request for an evidentiary hearing when the defendant's "allegations, even if true, do not entitle him to relief or when [his] allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." DeCologero v. United States, 802 F.3d 155, 167 (1st Cir. 2015) (citation omitted).  Because the allegations in Meléndez's motion contradict the record and are conclusory, his request for an evidentiary hearing is **DENIED**.

## 3.    Unconstitutional Acquisition of Evidence

Meléndez "challenges the constitutionality of the manner in which the evidence was obtained, to indict him." (Docket

---

[9] The Court need not consider whether Anglada's performance was objectively unreasonable, because Meléndez failed to demonstrate prejudice.  See United States v. LaBonte, 70 F.3d 1396, 1413-14 (1st Cir. 1995) ("[A] failure of proof on either prong of the Strickland test defeats an ineffective-assistance-of-counsel claim.").

No. 148 at p. 1.)   He maintains that the "Federally constitutionality rules, should have been applied making the probable cause to execute that was used to seek the search warrant." Id.  In recognizing that Meléndez filed his motion *pro se* without the assistance of counsel*,* the Court affords Meléndez a degree of leniency.[10]  His claim regarding the United States' unconstitutional acquisition of evidence, however, has no factual basis.   It is black-letter law "that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).   Because Meléndez provides no allegations in support of the proposition that the United States obtained evidence in an unconstitutional manner, this claim is **dismissed**.

## III. Meléndez's Motion for Arrest of Judgment

Meléndez moves for arrest of judgment pursuant to Rule 34 because, he argues, the Court erred in denying his request for a trial by jury.  (Docket No. 149.)   At Meléndez's sentencing hearing, he moved to withdraw his guilty plea.  (Docket No. 192.) In support of Meléndez's motion to withdraw his guilty plea, he stated:

---

[10] Meléndez requested that the Court appoint new counsel.  (Docket Nos. 148 and 163.)  The Court granted Meléndez's request.  (Docket No. 164.)

> I looked at those papers, and the truth is – I know I am
> guilty of what I did.  I am not saying that I am not,
> and I am here to try to restart my life, to be
> resurrected, sort to speak, but 22 years, I just think
> that it's not fair, what I signed, and that's why I want
> to change my plea from guilty to not guilty.

Id. at p. 6.  The Court denied Meléndez's motion to withdraw his

guilty plea.  Id.  According to Meléndez, vacatur of judgment is

warranted because "the court lacked jurisdiction to Sentence him,

since he did indicate on the record, prior to being sentenced by

the court that he wished to be tried by and [sic] jury." (Docket

No. 149 at p. 1.)

Meléndez's Rule 34 motion is untimely.  Pursuant to Rule 34,

the Court shall arrest judgment "if the court does not have

jurisdiction of the charged offense."  Fed.R.Crim.P. 34(a).

Defendants seeking an arrest of judgment must move for relief

"within 14 days after the court accepts a verdict or finding of

guilty, or after a plea of guilty or nolo contendere."  Id.; see

United States v. Poser, 463 F. Supp. 434, 437 (S.D.N.Y. 2006)

("Defendant's motion, pursuant to Fed.R.Crim.P. 34, to arrest

judgment is denied on the ground that it is untimely.").  Meléndez

entered a plea of guilty on August 30, 2017.  (Docket No. 72.)

Seven months after Meléndez's change of plea hearing, he moved for

arrest of judgment.  (Docket No. 149.)  The Court need not address

the merits of Meléndez's motion for arrest of judgment because he

failed to file his Rule 34 motion within the fourteen-day period of limitations.  Accordingly, Meléndez's motion for arrest of judgment is **DENIED.**

## IV. Conclusion

For the reasons set forth above, Meléndez's motion to withdraw his guilty plea and motion for arrest of judgment are **DENIED.** (Docket Nos. 148 and 149.)  Montijo's motion for judgment of acquittal is **DENIED.**  (Docket No. 173.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 14, 2018.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE